UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| VS. | : Docket. Nos. 3:05CR111 (JBA) and |
| | 3:05CR153 (JBA) |
| HAKAN YALINCAK | : April 23, 2008 |

GOVERNMENT'S OPPOSITION MEMORANDUM TO
DEFENDANT'S MOTION TO QUASH OR VACATE
WRIT OF EXECUTION

Pursuant to this Court's Order entered April 14, 2008, the United States of America hereby files its objection to Defendant Yalincak's motion to vacate or quash the Writ of Execution recently entered by this Court. Based upon the reasons articulated below, the Defendant's motion should be denied.

*Factual Background*

Defendant Hakan Yalincak entered a guilty plea in both of these criminal cases on June 6, 2006, and was sentenced by this Court on April 11, 2007.

The "Rider Concerning Restitution" portion of the Plea Agreement provided in relevant part that:

> The order of restitution has the effect of a civil judgment against the defendant. In addition to the court ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. See 18 U.S.C. § 3614.

After the entry of the guilty plea, and a few months prior to sentencing, Defendant Yalincak filed a series of at least six civil suits in this District, and then filed a seventh suit

shortly after sentencing[1] .  One of the suits remains pending, one is stayed in light of a settlement in principal with dismissal expected, and the other five suits have been closed through settlement or voluntary/stipulated dismissal.

On April 11, 2007, this Court imposed sentence, and as a special condition of supervised release, the Judgment and Commitment Order included a restitution order as follows:

> Defendant shall pay restitution in the amount of $4,182,000.00, of which defendant is jointly and severally liable with Ayfer Yalincak for $2,250,000.00 as follows: $1,750,000.00 to F.M. and $500,000.00 to W.A-M.  Restitution shall be paid at the rate of $1,000.00 per month, with interest waived.  This amount may be modified based on the defendant's ability to pay as determined by United States Probation Office (USPO) and approved by the Court.

Since the date of sentencing, Defendant Yalincak has made a total of four (4) payments totaling $175.00; specifically, a $100.00 payment on July 28, 2006; and three $25.00 payments on October 16, 2007, January 17, 2008 and April 11, 2008.

The Government filed an application on March 25, 2008, seeking to levy any compensation that Defendant Yalincak may derive for the resolution of any civil action.  The Government's Application was granted and a Writ of Execution was issued on March 26, 2008.  Notice of the Writ was provided to Defendant Yalincak, through his attorney, on March 27, 2008.  Defendant Yalincak now seeks to quash or vacate the Writ of Execution.

### *Argument*

---

[1] *Yalincak v. Ring, et al.*, docket number 3:07CV130 (JBA); *Yalincak v. Mangan, et al.*, docket number 3:07CV131 (JBA); *Yalincak v. Fishman, et al.*, docket number 3:07CV132 (SRU); *Yalincak v. Meehan, et al.*, docket number 3:07CV168 (MRK); *Yalincak v. Sherman, et al.*, docket number 3:07CV170 (AHN); *Yalincak, et al. v. Barack, et al.*, docket number 3:07CV311 (AVC); *Yalincak v. Gonzales, et al.*, docket number 3:07CV1109 (AWT).

In support of his motion to quash or vacate, Defendant Yalincak raises several arguments without any authority, all of which lack merit, and should be rejected as a matter of law.

*1.      Defendant Yalincak is obligated to pay restitution while incarcerated.*

Defendant Yalincak erroneously contends at Sections 1, 3, 7 and 8 of his motion that he has no obligation to pay his restitution debt until he commences supervised release, on or about October 8, 2009.  Further, Defendant Yalincak notes that he has commenced voluntary payments through the Bureau of Prisons' Inmate Financial Responsibility Program ("IFRP").  Defendant Yalincak's argument should be rejected since it is contrary to applicable law, based upon the following reasons.

First, pursuant to the plea agreement voluntarily signed by Defendant Yalincak, as well as 18 U.S.C. § 3613, the restitution order imposed by this Court may be treated by the Government as a civil judgment, which becomes immediately enforceable upon the entry of judgment.  Thus, the Government (on behalf of the victim), may always seek immediate payment in full when enforcing a restitution debt$^2$.  The Second Circuit recognized in *United States v. Walker*, 353 F.3d 130, 133 (2nd Cir. 2003)(*citing* 18 U.S.C. § 3664(m)(1)(B)) that "[t]he significance of [payment schedules] is diminished . . . by the fact that the victim may convert the restitution order into an abstract of judgment for the full amount of the restitution order, which 'shall be a lien on the property of the defendant . . . in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.'"

---

$^2$ The Government's statutory lien against Defendant Hakan Yalincak was perfected in accordance with 18 U.S.C. § 3613( c), by filing a Notice of Lien with the Town Clerk in Bristol, Connecticut, on May 11, 2007.

*See also United States v. Baldwin*, No. 3:98CR215(PCD), 2006 WL 2085278, at *3 (D. Conn., July 24, 2006).

Additionally, the authority of the Government to immediately enforce a restitution order becomes even more compelling where, as here, the defendant acquires the means to pay at least a portion of his restitution while incarcerated. Congress has made its intent crystal clear that victims should be made whole in the shortest time possible. *See* 18 U.S.C. § 3572(d)(2) and 18 U.S.C. § 3664(k). Defendant Yalincak is under a continuing obligation under 18 U.S.C. § 3664(k) to inform the Government of "any material change" in his economic circumstances, yet he failed to provide notice to the Government of the settlement/dismissal of his pending civil suits, and the anticipated compensation from those dispositions.

The Defendant argues at Section 7 of his motion that to modify the payment plan imposed at sentencing, especially during the period of incarceration would constitute "an unlawful, constructive amendment of the Criminal Judgment." This is clearly an erroneous claim that ignores the authority of "any party", including the Government, the victim and this Court, *sua sponte*, to modify a payment schedule pursuant to 18 U.S.C. § 3664(k) and (o), due to a change in a defendant's economic circumstances.

Most importantly, and completely ignored by Defendant Yalincak is 18 U.S.C. § 3664(n), which specifically provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

The current circumstances in this case, where Defendant Yalincak, who owes restitution and may receive substantial resources from a settlement during his period of incarceration, is precisely the type of application contemplated by Section 3664(n).

Defendant Yalincak attempts to raise an equitable defense at Section 8 of his motion that he is voluntarily participating in the IFRP[3]. While it is true that participation in the IFRP is voluntary, Defendant Yalincak's defense is self-serving, since inmates who do participate in the IFRP also derive certain "incentives", such as earning more inmate performance pay. Additionally, inmates who work in the more desirable UNICOR program must participate in the IFRP, or the inmate will be removed from the UNICOR work detail and assigned to work elsewhere. 28 C.F.R. § 545.11(d)(5). Inmates who participate in IFRP also have the privilege of spending an increased amount in the commissary per month[4].

> 2. *Defendant Yalincak's previous "offers" are of no consequence to his obligation to pay restitution.*

Defendant Yalincak, at Sections 2 and 6 of his motion, attempts to raise an equitable defense based upon previous alleged offers to pay the subject funds pursuant to his Cooperation Agreement, and certain representations made at the sentencing hearing. Specifically, Defendant Yalincak argues that the subject "funds were offered in their entirety" and that the Government "unequivocally declined" the offer (Defendant's Motion at page 2); and that Defendant Yalincak commenced "numerous civil actions in an effort to recover funds for the defrauded

---

[3] *See* 28 C.F.R. § 545.10, *et seq.*

[4] Commissary provides inmates the privilege of obtaining merchandise either not provided by the Bureau of Prisons or a different quality than that provided by the Bureau. Commissary items include brand name toothpaste, deodorant, shaving cream, and various food items like candy bars or instant soup. The necessary toiletries are provided free to the inmates.

investors" (Defendant's Sentencing Memorandum at page 3). Defendant Yalincak's argument is at best, misleading. At the time of sentencing, Defendant Yalincak was seeking credit for cooperating with the Government. Thus, the argument went that the *possibility* that funds might one day become available as a result of the Defendant's civil actions, should be considered at the time that sentence was being imposed.

The truth of the matter is that at the time of sentencing, the Defendant had merely obtained two default judgments, and a third was likely. Contrary to Defendant Yalincak's assertion, he did not offer "funds in their entirety" derived from the default judgments. If an offer had been made, the best offer Defendant Yalincak could have proposed was assignment of his rights to those judgments, with the Government bearing the cost and burden to collect.

Furthermore, Defendant Yalincak recited in his Sentencing Memorandum at page 3, that he had recovered the amount of $121,500.00 in a civil case[5] that was being held in an escrow account. Defendant Yalincak, of course, hoped that this Court would infer that the $121,500.00 would be turned over and applied to the restitution debt, and adjust his sentence accordingly. Now, more than one year after sentencing, not one dime has yet been paid by Defendant Yalincak from any source other than his own prison account.

Moreover, on March 17, 2008, Defendant Yalincak filed his Motion for Leave to *Withdraw* Motion of Defendant Hakan Yalincak to Credit Defendants With Additional Funds Recovered in Bankruptcy Proceedings (emphasis added). Incredibly, Defendant Yalincak fails to even mention in his current motion that his alleged "offer" of funds was later rescinded by the

---

[5] *Mass Mutual Life Insurance Co. v. Hakan Yalincak*, docket number 3:05CV1038 (CFD).

defendant himself.  More importantly however, is that even if there had been a legally valid offer and acceptance (which there was not), such an equitable defense is inapplicable to Defendant Yalincak's statutory obligation under Section 3664(n) to turnover settlement/judgment funds.

Additionally, Defendant Yalincak's reliance upon Fed.R.Crim.P. 35 is misplaced.  Rule 35 is only applicable in situations where the Court may be inclined to reduce a sentence.  Here, there is no issue concerning a reduction of Defendant Yalincak's sentence is any manner.  If anything, Defendant Yalincak faces heightened punishment pursuant to 18 U.S.C. §§ 3614 and 3615, due to a willful failure to pay restitution.   In any event, here the Government is seeking to enforce a restitution order through civil remedies, including levying on settlement funds through execution.  The exclusive civil remedies available to the United States to enforce payment of restitution debts are found under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, *et seq.*  The FDCPA may be specifically applied to restitution debts.  *See* 28 U.S.C. § 3002(3)(B).  *See also* 18 U.S.C. § 3664(m)(1)(A)(i).  Pursuant to 28 U.S.C. § 3003(f), the Federal Rules of *Civil* Procedure (not *Criminal* Procedure) are applicable to execution proceedings, such as in this case.  Defendant Yalincak's reliance on Fed.R.Crim.P. 35 is flawed because Rule 35 simply does not apply to this civil execution action.

    3.    <u>The status of the one remaining civil case should not pre-empt 18 U.S.C. § 3664(n).</u>

Defendant Yalincak, concedes at Section 4 of his motion that he "does not object to applying funds he recovers through litigation in accordance with the Court's restitution order." (Defendant's motion at page 2).  However, Defendant Yalincak argues in Sections 4, 5 and 9 of his motion that he should not be required to turn over the full amount he recovers.  On the contrary, he asserts that the funds should first be earmarked to pay "substantial litigation costs"

for not only his civil cases, but also "to litigate his family's immigration issues." (Defendant's motion at page 3). Defendant also claims that he "would have taken a different approach in litigating the actions and requesting increased recoveries". *Id.* Additionally, at Section 9 of his motion, Defendant Yalincak contends that although proceeding *pro se*, he has incurred financial costs, and that levying on settlement funds "destroy any incentive the defendant has to either settle the actions or to pursue the litigation". (Defendant's motion at page 4).

Lastly, Defendant Yalincak claims at Section 5 of his motion, without any support, that the issuance of the Writ of Execution will adversely affect settlement discussions and prejudice the Defendant before this District's Court.

Defendant Yalincak's arguments must fail for the following reasons. First, Defendant Yalincak was permitted by this Court to proceed *in forma pauperis* in five of the six cases in which he appeared *pro se*. In the sixth case in which Defendant Yalincak appeared *pro se, Yalincak v. Gonzales, et al.*, docket number 3:07CV1109 (AWT), the defendant voluntarily dismissed the action before his motion to proceed *in forma pauperis* was decided. Thus, Defendant Yalincak has already defrayed the litigation costs in the *pro se* cases he brought.

Moreover, in the one remaining civil case, where Defendant Yalincak retained counsel[6], his counsel of record is Bernard M. Grossberg (counsel in this criminal case). Defendant Yalincak is one of four co-plaintiffs in this one civil case, all of whom retained Attorney Grossberg. Thus, there may be up to four litigants all contributing to the litigation costs incurred in the case. Additionally, Defendant Yalincak fails to mention that just two months prior to Attorney Grossberg appearing in this criminal case, on or about October 19, 2005, Defendant

---

[6] *Yalincak, et al. v. Barack, et al.*, docket number 3:07CV311 (AVC), currently pending.

Yalincak paid Attorney Grossberg (or directed Attorney Grossberg to be paid) the sum of $389,967.00 from investors' funds, presumably as a retainer.  *See Exhibit A*.  In light of this substantial payment and the relatively modest litigation that followed, the Government respectfully requests that Attorney Grossberg include in his reply brief an exact accounting of the October 19, 2005 payment, and/or any other sums (including the $121,500.00 derived from the *Mass Mutual Life Insurance* case), up to the present.  Perhaps whatever litigation costs are currently claimed by Defendant Yalincak are actually being deducted from the funds previously paid to Attorney Grossberg.

Additionally, Defendant Yalincak's remaining equitable arguments should also fail.  Defendant Yalincak's claim that there is no longer any incentive for him to proceed with settlement/litigation completely ignores the fact that any funds levied will *reduce* not only his restitution debt, but also the joint and several restitution debt of his co-defendant and *mother*.  While applying his settlement proceeds to the restitution debt may not be Defendant Yalincak's first choice of how to spend his money, he and his mother nevertheless will benefit from reducing their debt.  To the extent that Defendant Yalincak may have allegedly earmarked the proceeds for his family's immigration matters, that is clearly a discretionary decision in which Defendant Yalincak is choosing to assume a cost on behalf of another adult(s).  Defendant Yalincak provides no explanation as to why the other family members cannot represent themselves, or make their own arrangements.  Moreover, if the issue becomes a balancing test between the needs of Defendant Yalincak's co-defendant and the victims in this case, it is clear that Congress has prioritized the needs of these victims, and has mandated that settlement

proceeds "shall be required" to be applied to the restitution debt without regard to a defendant's discretionary needs or financial condition. *See* 18 U.S.C. § 3664(n).

Lastly, Defendant Yalincak offers no explanation in Section 5 of his motion as to why the defendants in his remaining civil actions[7] "may cease settlement discussions" in light of the Writ of Execution. To the extent that any settlement discussions concern the payment of funds to Defendant Yalincak and/or his co-defendant, it is difficult to conceive of a situation in which the manner in which the settlement funds are ultimately spent would derail the settlement process. More importantly, Defendant Yalincak's blanket statement that the Writ of Execution issued by this Court "may influence the respective courts in deciding pending motions adversely to the defendant" (Defendant's motion at page 3) is wholly without merit. Moreover, even if the Defendant were somehow prejudiced by this Court (which he is not), or any Court, he certainly could seek recusal or some other appropriate remedy.

## *Conclusion*

The Government respectfully maintains that Defendant Yalincak's restitution debt is due and owing and, that pursuant to 18 U.S.C. § 3664(n), he is required to turnover settlement proceeds to his victims. To the extent that this Court believes that the payment plan provided in its Judgment should be adjusted, the Government so moves pursuant to 18 U.S.C. § 3664(k), or in the alternative, the Government respectfully requests that this Court consider modification *sua*

---

[7] The Government assumes that Defendant Yalincak's reference in Section 5 of his motion to settlement discussions in pending civil "actions" is a reference to *Yalincak, et al. v. Barack, et al.*, docket number 3:07CV311 (AVC) and *Yalincak v. Sherman, et al.*, docket number 3:07CV170 (AHN). If the reference includes civil matters pending in other jurisdictions and/or contemplated but not yet commenced, the Government respectfully requests that Attorney Grossberg be required to identify in his reply brief, *and on a continuing basis*, all civil cases that may be subject to the Writ of Execution.

10

*sponte*, as permitted by Section 3664(k).  Lastly, all of Defendant Yalincak's equitable arguments should be rejected as meritless, unsupported and contrary to applicable law.  The Government respectfully maintains its request that this Court require Attorney Grossberg in his reply brief to provide (1) a complete accounting from at least October, 2005 to the present, of any funds currently held and/or previously held and disbursed on behalf of Defendant Yalincak and/or the Yalincak family (including the $121,500.00 recovered in *Mass Mutual Life Insurance Co. v. Hakan Yalincak*, docket number 3:05CV1038 (CFD), and the $389,967.00 paid to Attorney Grossberg on October 19, 2005); and (2) *on a continuing basis*, a complete listing of all civil actions brought by or on behalf of Defendant Yalincak and/or his co-defendant, that are either contemplated or pending in any jurisdiction.  This is particularly important if Defendant Yalincak solicits future settlements in consideration of forbearing from litigation, in an attempt to circumvent the provisions of 18 U.S.C. § 3664(n).  To the extent that Attorney Grossberg should become aware in the future of any resources which may be subject to Section 3664(n) and this Court's Writ of Execution, it is assumed he will comply with the reporting requirements of Sections 3664(k) and (n).  Further, Defendant Yalincak should be admonished to comply with those statutes as well.

      Based upon all of the foregoing reasons, and in the interest of justice, the Government respectfully requests that Defendant Yalincak's motion to quash or vacate the Writ of Execution be denied.

Respectfully submitted,

Nora R. Dannehy
Acting United States Attorney

*/s/ Christine Sciarrino*

Christine Sciarrino
Assistant United States Attorney
157 Church Street
New Haven, CT  06508
Tel. (203) 821-3700/ Fax: (203) 773-5392
Federal Bar No. CT3393
E-MAIL: CHRISTINE.SCIARRINO@USDOJ.GOV

<u>Certification</u>

I hereby certify that on April 23, 2008, a copy of the foregoing Opposition Memorandum was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Christine Sciarrino*