UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>HAKAN YALINCAK | Crim. No. 3:05cr111 (JBA) and<br>05cr153 (JBA)<br><br>May 11, 2015 |

**RULING ON PENDING MOTIONS**

On June 6, 2006, Defendant Hakan Yalincak pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 and one count of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced to 42 months' imprisonment and ordered to pay restitution in the amount of $4,182,000.[1] (Judgment [Doc. # 145][2].) The Court ordered restitution be paid at a rate of $1,000 per month, with interest waived. (*Id.*) Upon motion by Defendant, on September 9, 2010, the Court modified [Doc. # 190] Defendant's restitution payment schedule to require $20 monthly payments until Defendant's financial circumstances improved. Defendant now moves [Doc. # 191] to modify the conditions of his restitution and for credit towards his restitution [Doc. ## 200, 233], and he objects [Doc. # 219] to the writ of garnishment granted by this Court [Doc. # 205] on August 2, 2011.

---

[1] Mr. Yalincak is jointly and severally liable for $2,250,000 of this amount with Ayfer Yalincak.

[2] All docket numbers refer to No. 3:05cr111 unless otherwise indicated.

I.      **Discussion**

A.  **Motion to Modify Restitution Payment Schedule and Objection to Writ of Garnishment**

Defendant styles his first pending motion [Doc. # 191] as a motion to modify his restitution repayment schedule, but it is apparent that the motion was filed in anticipation of and in order to preempt the Government's application for writ of garnishment, which the Government filed [Doc. # 193] shortly thereafter.  In the motion, Defendant seeks to increase his payment schedule to $1,000 per month or to a greater monthly figure that would still permit him living expenses, in light of the settlement of a suit he filed against his attorney Bernard Grossberg in bankruptcy court.[3]   The Government seeks, however, to garnish the entire sum of the settlement, which was being held in a custodial account opened by Attorney Grossberg.[4]

The Court granted [Doc. # 205] the Government's application for a writ of garnishment on August 2, 2011, finding that the Government had complied with the general requirements for an application for a writ of garnishment set out in 28 U.S.C. § 3205(b)(1).  Defendant objected to the writ [Doc. # 219] on October 4, 2011, arguing that: (1) the Government failed to comply with the requirements of 28 U.S.C. § 3205(b)(1)(B) because it served its demand on Attorney Grossberg although he no longer represented Mr. Yalincak (Obj. to Writ of Garnishment at 11); (2) "to the extent

---

[3] Defendant requests in the alternative that the Court issue a stay until his petition for a writ of habeas is ruled upon.  Because that petition has now been denied, this part of Mr. Yalincak's motion is moot.  *See* No. 3:08cv1456 [Doc. # 64].

[4] Pursuant to an Order of this Court [Doc. # 225], the funds, totaling $134,908.42 are currently being held in the Court's Registry Account.

that any funds are subject to garnishment, they should be applied through the normal restitution process via the Clerk of this Court, not through the bankruptcy court" (*id.* at 12); (3) the writ misstates Mr. Yalincak's interest in the account established by Attorney Grossberg (*id.* at 14); and (4) Mr. Yalincak is entitled to claim several exemptions (*id.* at 15).

These objections are, however, without merit.   Notwithstanding Defendant Yalincak's claims that Mr. Grossberg no longer represented him in May 2010 when the Government sent Mr. Grossberg a demand letter, there is nothing on the docket indicating that Attorney Grossberg had withdrawn from this matter at that time.[5] Moreover, in light of the Court's restitution order, the Government's May 2007 letter to Attorney Grossberg (*see* Gov't's Suppl. to Status Report [Doc. # 232]), and Mr. Yalincak's anticipatory Motion to Modify [Doc. # 191], Defendant Yalincak can hardly claim not to have had notice of his debt and the Government's intention to collect on it.

Mr. Yalincak's second objection is foreclosed by the Court's order approving the Government's application for the writ of garnishment, in which the Court determined that in light of the Government's agreement with the Trustee of the Bankruptcy Estate of HMMH Holdings, LLC to distribute the funds in the account only to creditors of the Bankruptcy Estate previously identified as victims of the Yalincak scheme, a writ of garnishment on the bankruptcy estate was a proper means for the Government to obtain the restitution owed by Mr. Yalincak.  In addition, as the Government notes in its Reply [Doc. # 204] to Omnibus Response, Mr. Yalincak's arguments on behalf of the victims

---

[5] In fact, to date, the docket shows no withdrawal of Mr. Grossberg as counsel for Mr. Yalincak.

"are at best improper, since the Defendant clearly does not represent the interests of his victims."

In his third objection, Mr. Yalincak claims that third parties Hale Yalincak and Dr. Omer B. Yalincak are each entitled to $45,000 of the funds in the account at issue, and that Mr. Yalincak has no property rights to that $90,000. This claim is in accord with Attorney Grossberg's Supplemental Answer to the writ, but it is belied by a substantial amount of record evidence, as noted by the Government in its Status Report. (*See* Status Report [Doc. # 227] at 8–9.) As acknowledged by Ms. Yalincak and Dr. Yalincak in their Complaint in the adversary proceeding styled *Hale Yalincak, et al. v. Yann Geron et al.*, No. 10-2808 (SCC) (SDNY), the Mass Mutual Settlement Proceedings, comprising the $121,500 at issue here, was made "payable to Mr. Yalincak to void three (3) life insurance policies issued by Mass Mutual for the benefit of Mr. Yalincak." (Compl. ¶ 40.) Mr. Yalincak's Sentencing Memorandum reiterates that in an effort "to make the defrauded investors whole," he "recovered $121,000 from Mass Mutual Life Insurance Company, which is deposited in an escrow account for immediate release upon the defendant's sentencing or in accordance with orders issued by this Court." (Def.'s Sent. Mem. [Doc. # 131] at 45.) In light of these admissions, Mr. Yalincak cannot now claim that the Yalincak family has an interest in the settlement proceeds.

Mr. Yalincak's final objection fares no better. Mr. Yalincak attempts to claim five exemptions. Three of the claimed exemptions rely on Connecticut law regarding property exempt from post-judgment proceedings, *see* Conn. Gen. Stat. § 52-352b, which is expressly preempted by 26 U.S.C. § 6334(c) ("Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the

property specifically made exempt by subsection(a)") and 28 U.S.C. § 3003(d) ("This chapter shall preempt State law to the extent such law is inconsistent with a provision in this chapter").

One of the claimed exemptions relies on the Consumer Credit Protection Act ("CCPA"), which states that, with certain exceptions not applicable here, "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less." 15 U.S.C. § 1673(a). On the basis of this section, Mr. Yalincak claims that 25% of the approximately $13,500 paid into the account between 2006 and 2011 as interest and dividends is exempt as "earnings." However, the interest that accrued on Mr. Yalincak's settlement proceeds plainly does not fit the definition of "earnings" under the CCPA, which is "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C.A. § 1672(a). Mr. Yalincak's final claimed exemption is $2,000 per month for ongoing medical treatment and costs, a claim made for the first time here and in support of which Mr. Yalincak provides no documentation. For the foregoing reasons, Mr. Yalincak's objections to the Government's writ of garnishment are overruled and his motion for modification to his restitution payment schedule is denied.[6]

---

[6] As stated in the Court's June 25, 2012 Endorsement Order [Doc. # 229], no hearing is necessary on Mr. Yalincak's objections.

**B.  Motions for Credit**

Next, Mr. Yalincak seeks, via two different motions [Doc. ## 200, 233], credit toward his restitution.  To date, Mr. Yalincak has filed two such motions, seeking credit of $1,050,907.38, recovered by Yann Geron, the Trustee of Daedalus Capital Relative Value Fund I, LLC ("Daedalus") from New York University [Doc. #147], and $90,000, recovered by investors F.M. and R.D. in *Meyer et al v. J.P Morgan Chase*, Case No. 05-CG-8308 [Doc. # 159].   These motions were granted absent objection [Doc. # 160] without a determination on the merits.  However, the Clerk's records indicate that Mr. Yalincak has not been credited with these sums, and careful review of the motions, as detailed below, reveals that the Court's previous grant of Mr. Yalincak's first two motions for credit was premature.  Pursuant to Federal Rule of Civil Procedure 60(a), the Court corrects that error now and vacates its order granting Mr. Yalincak's first two motions for credit.[7]

---

[7] Mr. Yalincak several times contends that the Government did not object to his first two motions for credit pursuant to an agreement negotiated and agreed to by the Government and approved by this Court, "to permit recoveries received by the Daedalus Bankruptcy Trustee to be immediately credited against Mr. Yalincak's restitution." (Reply [Doc. # 236] at 2; *see* Mem. Supp. Mot. for Credit [Doc. # 234] at 4.)  Perplexingly, in support of this assertion, Mr. Yalincak cites to Doc. # 219 (evidently in its entirety, as no particular page is noted), which is his objection to the writ of garnishment, and which provides no obvious support for his claim.  He contends that the agreement between himself and the Government "was formalized in a letter from the Defendant's former Bankruptcy Counsel, Gerrard DiConza, to the Bankruptcy Court," but he does not provide the Court with that letter.  (Reply at 2.)  The Government now appears to dispute that it ever agreed to automatic credit for funds recovered from bankruptcy proceedings, and its response to Mr. Yalincak's first motion for credit belies Mr. Yalincak's contentions to the contrary.  In its response, the Government, while not objecting to Mr. Yalincak receiving credit for funds recovered through bankruptcy proceedings, states that in order to be credited, Mr. Yalincak would need to notify the Financial Litigation Unit "of any

Mr. Yalincak now additionally seeks credit for $118,000 in funds recovered in bankruptcy actions instituted by Mr. Geron (Mem. Supp. Mot. for Credit [Doc. # 201] at 3); $142,750 in funds recovered in bankruptcy actions by Richard Coan, Trustee of HMMH Holdings, LLC ("HMMH") (*id.*); $111,429.97 paid to investor F.M. and $63,674.27 paid to investor R.D. as a result of the HMMH bankruptcy proceedings (Mem. Supp. Mot. for Credit [Doc. # 234] at 6); and $1,081,817.10 paid to F.M. and $618,182.90 paid to R.D. as a result of the settlement of their suit against Michael Legaramo and Barack Ferrazano, LLP (*id.* at 8).   The Government opposes Mr. Yalincak's motions, contending that he has not met his burden of proof to "show that the bankruptcy recoveries were made to his victims for the same loss as the underlying criminal loss," as required by 18 U.S.C. § 3664(j).  (Gov't's Opp'n to Mot. for Credit [Doc. # 235] at 3.)  The Government additionally argues that the Court's previous Order granting Mr. Yalincak's motions for credit absent objection permits Mr. Yalincak credit only if he meets his burden of proof, which the Government contends, he has not done.  (*Id.* at 4–5.)

In order for Mr. Yalincak to receive credit for funds recovered through bankruptcy or other proceedings, he must demonstrate that (1) the victims received the funds; (2) that the victims received the funds for the same loss for which Mr. Yalincak is responsible; and (3) if the victims received funds from a source other than Mr. Yalincak, that source is not entitled to step into the shoes of the victim and receive compensation from Mr. Yalincak.

---

distribution" of recovered funds by the Trustee "to victims of the defendants' fraudulent scheme."  (Gov't's Response to Mot. for Credit [Doc. # 156] at 2.)  Then, as now, the Government's acquiescence to Mr. Yalincak receiving credit toward his restitution was premised on Mr. Yalincak's giving this notification.

### 1.  Proof that the Victims Received the Funds for Which Mr. Yalincak Seeks Credit

The Indictment identified five victims of Mr. Yalincak's offenses, to whom the Court ordered restitution be paid: W.A-M., F.M., R.D., and J.C./L.C.  Mr. Yalincak claims that several of these victims received restitution via (1) the Daedalus bankruptcy proceedings; (2) the HMMH bankruptcy proceedings; (3) *Meyer et al v. J.P Morgan Chase*, Case No. 05-CG-8308; and (4) a lawsuit F.M. and R.D. filed against Michael Legaramo and Barack Ferrazano, LLP.

#### a.  Daedalus Bankruptcy Proceedings

Mr. Yalincak has provided the Court with evidence that the Daedalus bankruptcy proceedings yielded $1,050,907.38 for the Trustee of Daedalus from NYU and $118,000 for the Trustee from American Express, Pacific Business Forums, James N. Oliphant, Jeff Benton, Tiffany & Company, Barack Ferrazzano Kirschbaum Perlman & Nagelberg, LLP, and Michael Legamaro.  (*See* Exs. A–F to Mem. Supp. Mot. for Credit [Doc. # 201].)  However, Mr. Yalincak has provided the Court with no evidence of the sums distributed by the Trustee to the individual victims, if any.  He has not, therefore, met his burden with respect to these claims and he is not entitled to restitution credit for them at this time.

#### b.  HMMH Bankruptcy Proceedings

The Trustee for HMMH's final account and distribution report, submitted to the Court by Mr. Yalincak [Doc. # 234-1], demonstrates that R.D. received $63,874.27 from the Trustee and F.M. received $111,429.97.  This is sufficient to meet Mr. Yalincak's burden of demonstrating that these funds were actually received by victims.

8

### c.    *Meyer et al v. J.P Morgan Chase*

Mr. Yalincak seeks credit for $90,000 that he claims was recovered by investors F.M. and R.D. in a suit filed by the investors against J.P. Morgan Chase in chancery court in Illinois, but he submits no information or evidence about the suit.[8]  Absent further information, the Court cannot conclude that Mr. Yalincak has met his burden of demonstrating that the victims were compensated for the same loss for which he was responsible.

### d.    **F.M. and R.D. Lawsuit Against Legamaro and Barack Ferrazzano**

Finally, Mr. Yalincak claims he should be credited $1.7 million for settlement funds received by F.M. and R.D. "in connection with the settlement of their lawsuit against Michael J. Legamaro and Barack Ferrazzano, LLP, which alleged fraud on the part of Mr. Legamaro and his former firm and sought to recover assets and funds misappropriated by Daeddalus' former attorneys." (Mem. Supp. Mot. for Credit [Doc. # 234] at 7–8.)  In support of this claim, Mr. Yalincak cites to *Yalincak v. Barack Ferrazzano, LLP*, a case clearly not brought by F.M. and R.D. and the relevance of which eludes the Court, as well as a one-line letter purportedly from the attorney representing F.M. and R.D. in the suit stating simply that "[t]he above referenced matter settled for $1,700,000.00." (*See* Ex. 2 to Mot. for Credit.)  The "above referenced matter" is

---

[8] Mr. Yalincak represents to the Court in a footnote in his final motion for credit that Doc. ## 147 and 159 "detail Mr. Yalincak's $90,000 bank account at Bank One being turned over in Meyer v. J.P. Morgan Chase." (Mem. Supp. Mot. for Credit [Doc. # 234] at 6 n.10.)  Doc. # 147 is, however, devoid of any mention of *Meyer v. J.P. Morgan Chase* and Doc. # 159, which includes a single conclusory assertion that $90,000 was recovered by the investors in the referenced case with no attachments, does not constitute "detailed" proof.

*Doede/Meyer v. Legamaro, et al*, Court No. 07 L 4186.  No further information is provided (including such basic information as what court the case was filed in), and the Court is unable to determine based on the evidence provided how much of the funds were given to each investor[9] and whether the funds were for the same loss for which Mr. Yalincak is responsible.

### 2.   Proof that Recovered Funds Were for the Same Loss

Although Mr. Yalincak has shown that R.D. and F.M. received funds from the Trustee for HMMH in the amounts of $63,874.27 and $111,429.97, he has not identified the source of all of these funds.  The final account and distribution report [Doc. # 234-1] prepared by the Trustee for HMMH shows that the funds distributed by the Trustee came from four sources: "bank account," "avoidance action against Hines 600 Lexington, LLC," "avoidance action against Barrack Ferrazzano" [sic] and "interest income."

In support of his third motion for credit, Mr. Yalincak submitted the settlement agreement between the Trustee and Hines 600 Lexington, LLC ("Hines") and Barack Ferrazzano ("BF").  That agreement states:

> In late April 2005, HMMH received approximately $2,750,000 from Frank
> C. Meyer [F.M.] and Robert W. Doede [R.D.].  Between April 29 and May
> 4, 2005, HMMH transferred nearly [all] of the money it received to third
> parties, including [Hines and BF].  The Trustee has alleged that the April
> and May 2005 transfers to [Hines and BF] constitute fraudulent transfers. .
> . . The Trustee has alleged that Hines . . . received a fraudulent transfer of
> $250,000 from HMMH. . . . Hines had a lease for real property with the
> Debtor's subsidiary, Daedalus Capital Partners, LLC.   Hines had no
> contract or lease with HMMH, and the Trustee believes that HMMH had

---

[9] Mr. Yalincak represents that the settlement was distributed in proportion to the victims' respective investments: 64.63% for F.M. and 36.3% for R.D., but he provides no evidence that this was the case.  (*See* Mem. Supp. Mot. for Credit [Doc. # 234] at 8.)

> no obligation to pay Hines. . . . The Trustee has alleged that [BF] received a fraudulent transfer of $100,000 from HMMH. . . . [BF] received payments from HMMH but had a retainer agreement with the Yalincak family and the Daedalus entities.  Because the Trustee (and others, including the United States of America) has alleged that Hakan Yalincak, HMMH and its subsidiaries were operating a confidence scheme, the Trustee contends that [BF] provided no value whatsoever to HMMH.

(Ex. G to Mem. Supp. Mot. for Credit [Doc. # 201] at 2, 5, 6.)  The Trustee agreed to settle with Hines for $77,750 and with BF for $60,000.  Those payments, totaling $137,750, which appear to have been for the same loss for which Mr. Yalincak is responsible, are reflected in the Trustee's final report as having been distributed to R.D. and F.M. along with funds from the "bank account."  However, neither the final report nor Mr. Yalincak provides any information regarding the source of the "bank account" funds, and Mr. Yalincak has therefore not met his burden of demonstrating that those funds were for the "same loss."

### 3.  Proof that the Sources of the Recovered Funds are not Entitled to Step into the Victims' Shoes

The final showing Mr. Yalincak must make in order to receive credit for restitution payments made by third parties is that the third parties are not entitled to step into the shoes of the victims and receive payments from Mr. Yalincak.  Mr. Yalincak has met this burden.  The $137,000 received by R.D. and F.M. from Hines and BF was comprised of funds invested by R.D. and F.M. in HMMH, then fraudulently transferred to Hines and BF, and then returned to the R.D. and F.M.  In such circumstances, Hines and BF cannot claim (and have not claimed) to be entitled to step into the shoes of the victims, particularly, as Mr. Yalincak observes, because BF was "Daedalus' former

attorney, which returned fees that were paid to it by the hedge fund due to its alleged *involvement* in the fraudulent scheme." (Mem. Supp. Mot. for Credit [Doc. # 234] at 9.)

Therefore, Mr. Yalincak will receive credit for $137,000 recovered by victims R.D. and F.M. Those funds will be apportioned between the victims according to the amount each is owed. Thus, 63.64% of the funds, $87,186.80, will be credited to F.M. and 36.36% of the funds, $49,813.20, will be credited to R.D.

### 4.  Cash Payments

Mr. Yalincak seeks clarification from the Court regarding his outstanding restitution balance. To date, the Clerk's Office reports having received: $15,359.61 from Mr. Yalincak and his mother ($11,955 from Mr. Yalincak and $3,154.61 from Ms. Yalincak) and $134,809.42 (now, with interest, $134,899.77) from the garnished account, for a total of $150,259.38. The distribution of those funds is detailed below:

| Victim | Amt. Paid | Checks Issued but Returned[10] | Amt. Outstanding |
|--------|-----------|-------------------------------|------------------|
| W.A-M. | $1,793.98 | $10,649.17 | $748,855.19 |
| F.M. | $4,718.36 | $603.56 | $1,745,885.20 |
| R.D. | 0 | 0 | $1,000,000 |
| J./L. C. | 0 | 0 | $682,000 |

The $134,899.77 from the garnished account has not yet been distributed to the victims.

Additionally, Mr. Yalincak provided the Court with a letter dated February 4, 2013 from the Government in which the Government advised him that it intended to "liquidate" "certain property belonging to Hakan Yalincak, namely a gold coin and two gold rings" by March 8, 2013, and that "[o]nce liquidated, the net proceeds from the sale

---

[10] The Government is directed to provide the Clerk's office with up-to-date addresses for all of the victims.

of the property [would] be applied to the restitution debt." (Ex. 3 to Mem. Supp. Mot. for Credit [Doc. # 234].)  The Government is ordered to update the Clerk's office with regard to the net proceeds from that sale forthwith.

## II.      Conclusion

For the foregoing reasons, Mr. Yalincak's objections to the writ of garnishment [Doc. # 219] are overruled and his Motion to Modify Restitution [Doc. # 191] is DENIED.  The Clerk's Office is directed to distribute the garnished funds to F.M. and R.D. such that F.M. will receive $85,850.21 (63.64%) and R.D. will receive $49,049.56 (36.36%).  The Court's previous ruling [Doc. # 160] on Mr. Yalincak's First Motion for Credit [Doc. # 147] and his Second Motion for Credit [Doc. # 159] is VACATED and the motions are DENIED pursuant to Federal Rule of Civil Procedure 60(a).  Mr. Yalincak's Third Motion for Credit [Doc. # 200] is DENIED.  His Fourth Motion for Credit [Doc. # 233] is GRANTED in part and DENIED in part.  Mr. Yalincak shall receive credit for $87,186.80 recovered by F.M. and $49,813.20 recovered by R.D. in the HMMH bankruptcy proceedings.  The Clerk is directed to update its records regarding Mr. Yalincak and Ms. Yalincak accordingly.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of May, 2015.

13