UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *v.*<br><br>HAKAN YALINCAK | Crim. No. 3:05cr111 (JBA)<br>and 05cr153 (JBA)<br><br><br>September 28, 2015 |

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION**

On May 11, 2015, this Court ruled on several motions [Doc. ## 191, 200, 233] that had been pending in this case for some time. (*See* Ruling on Pending Motions [Doc. # 237], hereinafter "Ruling.") Subsequently, Defendant Hakan Yalincak filed a motion [Doc. # 238] for reconsideration in light of new evidence. Following a telephonic status conference on July 7, 2015, the Court requested further briefing from the parties regarding the amount Mr. Yalincak should be credited for recoveries obtained through the Daedalus and HMMH bankruptcy proceedings. For the reasons that follow, Defendant's motion for reconsideration is granted in part and denied in part.

I.   Discussion[1]

   A. Vacatur of the Court's Order

As a preliminary matter, the Court must address Mr. Yalincak's contention that the Court erred in vacating: (1) its order [Doc. # 160] granting Mr. Yalincak's motion [Doc. # 147] for credit for $1,050,907.38 recovered in the Daedalus bankruptcy proceedings and (2) its order granting his motion [Doc. # 159] for credit for $90,000 recovered in the HMMH bankruptcy proceedings. (*See* Ruling at 8.)

Defendant contends that "Rule 60(a) does not permit reconsideration or relitigation of the merits" of the Court's order, and in any case, use of Rule 60(a) is not appropriate in a criminal proceeding. (Def.'s Mem. Supp. Restitution Credit [Doc. # 249] at 3, 5.) The Government, for its part, asserts that the Court "has appropriately utilized its inherent authority, and the authority set forth in Fed. R. Crim. P. 57(b), the various sections of the Mandatory Victims' Restitution Action, and the [Fair Debt Collection Practices Act ('FDCPA')], to vacate its previous order and rule as it did in its May 11, 2015 Ruling." (Gov't's Resp. [Doc. # 250] at 10.)

---

[1] Although "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsiderations," it is permissible to file reconsideration motions in criminal cases and such motions are governed by the same standard applicable to the equivalent civil filing. *United States v. Reyes*, No. 3:10-CR-120 (VLB), 2013 WL 1882305, at *1 (D. Conn. May 3, 2013). Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id*.

The parties' familiarity with the background of this case is presumed.

Upon reconsideration, the Court finds that although use of the Rules of Civil Procedure was appropriate in light of the language of 18 U.S.C. § 3613(a), *see id.* ("The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."), and 28 U.S.C. § 3001(a)(1), *see id*. ("Except as provided in subsection (b), this chapter provides the exclusive civil procedures for the United States--(1) to recover a judgment on a debt"), the Court's reliance on Rule 60(a) was nonetheless misplaced because Rule 60(a) does not permit correction of an oversight in the circumstances present here, *see In re Marc Rich & Co. A.G.*, 739 F.2d 834, 837 (2d Cir. 1984) ("The relevant distinction is between what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was wrong. The former comes within Rule 60(a); the latter does not." (internal quotation marks omitted)).

Nonetheless, the Court adheres to its decision vacating its prior order, on the basis of its inherent power to "correct mistakes made in its handling of a case." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("Nothing in the Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, i.e., until the entry of judgment.[2] In short, the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules." (internal quotation marks and citation omitted)).

### B. Daedalus Bankruptcy Proceedings

Mr. Yalincak raises two additional claims with respect to the Daedalus bankruptcy proceedings. First, he contends that he should receive credit for all funds recovered by the Daedalus Trustee, including funds used for administrative costs. (Def.'s Mem. Supp. at 8–9.)

---

[2] Although judgment has already entered in the criminal case here, there is no dispute that the Court retains jurisdiction over the civil proceedings in which the Government seeks to recover Mr. Yalincak's restitution. *See* 18 U.S.C. § 3664(j)(2) (granting a sentencing court jurisdiction to apply setoffs for money recovered by victims).

Next, he claims that funds recovered by Jamson Holdings should be deemed to have been recovered by W.A.-M because they are in fact the same entity. (*Id*. at 10).

### 1. Administrative Costs

Perplexingly, Mr. Yalincak relies on 18 U.S.C. § 3663(b)(4) in support of his argument that "subtracting [professional fees] from the gross recovery is barred." (Def.'s Mem. Supp. at 8–9.) That statute provides that a restitution order may, "in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4). The connection between this law and Mr. Yalincak's request for credit for the Trustee's administrative expenses is elusive. Mr. Yalincak cites, and the Court is aware of, no authority for the proposition that a defendant should receive credit for restitution not actually received by his victims. For this reason, the Court declines to credit Mr. Yalincak with the $1,208,583.24 of recovered funds that were used by the Daedalus Trustee to cover administration expenses.

In the Court's initial Ruling, it declined to credit Mr. Yalincak for any funds recovered through the Daedalus bankruptcy proceedings because Mr. Yalincak had failed to offer any "evidence of the sums distributed by the Trustee to the individual victims, if any." (Ruling at 8.) Since that Ruling, Mr. Yalincak has come forward with the Daedalus Trustee's final report, which details proposed payments to J.C. and L.C. of $67,579.31, to Jamson Holding of $74,317.42, and to F.M. of $165,870.80. (*See* Ex. A to Mem. Supp. Mot. for Reconsideration [Doc. # 239] at 4–5.) Based on this report, which Mr. Yalincak represents was approved on March 19, 2015, the Government has agreed to a credit of $233,450.11 (accounting for the funds distributed to J.C/L.C. and F.M.). The Court will thus award Mr. Yalincak credit in this amount.

### 2. Jamson Holding

The next issue the Court must address with respect to the Daedalus bankruptcy proceedings is whether to credit Mr. Yalincak for funds recovered by Jamson Holdings. Mr. Yalincak asserts that funds received by Jamson Holdings should be deemed as received by W.A.-

4

M. because "W.A.-M. invested $750,000 through his offshore Cayman Islands based corporate entity (a personal holding company for W.A.-M.) called Jamson Holdings, Ltd." (Def.'s Mem. Supp. at 10 (internal citations omitted).) The Government "takes no position with respect to Yalincak's argument." (Gov.'t's Response at 3.) The Court finds, based on the documentation provided by Mr. Yalincak (*see* Ex. A to Def.'s Mem. Supp.), that W.A.-M. and Jamson Holdings are the same entity, and Mr. Yalincak will therefore be credited for the $74,317.42 received by Jamson Holdings. The following chart summarizes the Court's rulings with respect to the Daedalus bankruptcy proceedings:

| Victim | Restitution Received |
| --- | --- |
| W.A.-M. | $74,317.42 |
| J.C./L.C. | $67,579.31 |
| F.M. | $165,870.80 |
| R.D. | 0 |

### C. HMMH Bankruptcy Proceedings

The Court previously ruled that Mr. Yalincak should be credited $137,750 for recoveries made through the HMMH bankruptcy proceedings.[3] (*See* Ruling at 11.) The Court declined to credit Defendant for the remaining $37,554.24 received by F.M. and R.D. in the bankruptcy proceedings because Defendant had not demonstrated that the remaining funds were for the same loss for which Mr. Yalincak is responsible. (*Id.*) Mr. Yalincak now submits additional evidence (*see* Ex. B to Mot. for Reconsideration; Exs. 1 – 5 to Def.'s Reply [Doc. # 252]; Ex. 6 to Def.'s Mot. to Supplement Reply [Doc. # 253]), which the Government agrees is sufficient to satisfy his burden[4] (*see* Joint Status Report at 3). Therefore, Mr. Yalincak will be credited $175,104.24, to

---

[3] Due to a typographical error, however, the Court erred in apportioning that sum between F.M. and R.D.

[4] The Government argues that no "evidence has been submitted from the HMMH litigation that the reference to the 'Illinois account' is in any way connected to the J.P. Morgan Chase account at issue in the *Meyer* litigation." (Gov't's Response at 7.) The account referenced by the Government is one source of the funds from which the $175,104.24 was drawn. The Court initially refused to credit Mr. Yalincak for money drawn from these funds, awarding credit only for the $137,750 recovered through the Hines and Ferrazzano settlements. However, the Government's stipulation that Mr. Yalincak should receive credit for the entire $175,104.24 is an

be distributed between R.D. and F.M., with R.D. receiving $63,674.27 and F.M. receiving $111,429.97, as reflected in the Trustee's final distribution report. (*See* [Doc. # 234-1] at 4.)

Mr. Yalincak contends that because the Court previously awarded him credit for R.D. and F.M.'s gross recoveries, it should adhere to that decision now. (*See* Def.'s Mem. Supp. at 13–14.) Although Mr. Yalincak is correct that the Court did not deduct attorneys' fees and costs from the funds received by R.D. and F.M. (because no evidence of fees was offered nor any motion for the deduction of such fees made), it never ruled that Mr. Yalincak was entitled to $52,435.78 spent by the Trustee on administrative costs.[5]

For the reasons set out above with respect to administrative fees in the Daedalus proceedings, the Court declines to credit Mr. Yalincak for the $52,435.78 of recovered funds which were used for administrative fees and expenses and the $235.04 interest accrued by the account and evidently used for the administration of the trust. Thus, Mr. Yalincak will receive credit in the following amounts with respect to the HMMH bankruptcy proceedings:

| Victim    | Restitution Received |
|-----------|----------------------|
| W.A.-M.   | $0                   |
| J.C./L.C. | $0                   |
| F.M.      | $111,429.97          |
| R.D.      | $63,674.27           |

**D.  F.M. and R.D. Lawsuit against Lagamaro and Barack Ferrazzano**

The Court initially ruled that Mr. Yalincak had not met his burden of demonstrating that F.M. and R.D. actually received $1,700,000 for which he sought credit and that the money was for the same losses for which Mr. Yalincak was responsible. (*See* Ruling at 9–10.)  As Defendant noted in his motion for reconsideration, however, in issuing its original Ruling, the Court overlooked a letter which states that the referenced lawsuit "arises out of [F.M.] and

---

implicit acceptance of Mr. Yalincak's argument that he be credited for the funds distributed to F.M. and R.D. from the bank account.

[5] Nor did the Court leave "open the possibility" for the recovery of these funds "once Mr. Yalincak could provide further evidence regarding the source of the bank account," as Mr. Yalincak contends. (Def.'s Mem. Supp. at 13.)

6

[R.D.]'s investment in the Daedalus Relative Value Fund I, LLC and other related entities." (*See* Exhibit 1 to Defendant's Reply Third Mot. for Credit [Doc. # 236-1].)  Upon reviewing this letter, along with newly-submitted evidence (*see* Ex. F to Mot. for Reconsideration), and with the Government's agreement, the Court now reconsiders its Ruling and holds that Mr. Yalincak will be credited with $1,700,000 received by F.M. and R.D. in the civil action against Lagamaro and Barack Ferrazzano.  Those funds will be apportioned as follows:

| Victim | Restitution Received |
|---|---|
| W.A.-M. | $0 |
| J.C./L.C. | $0 |
| F.M. | $763,674.27 |
| R.D. | $936,325.73 |

### E. Cash Payments

Since the issuance of the Court's previous Ruling, the parties have notified the Court that Mr. Yalincak has been credited with the cash proceeds from the sale of a gold coin and two gold rings in the amount of $1,880.

Defendant has additionally noted a discrepancy in the Clerk's Office's accounting which has now been corrected.  The Clerk's Office reports that it has received $152,883.83 from Mr. Yalincak and his mother including $134,902.65 (with interest) from the garnished account.  The distribution of those funds is detailed below:

| Victim | Amt. Paid | Checks Issued but Returned[6] |
|---|---|---|
| W.A-M. | $1,144.81 | $10,649.17 |
| F.M. | $4,114.80 | $2072.40 |
| R.D. | 0 | 0 |
| J.C./L. C. | 0 | 0 |

Crediting Mr. Yalincak with $307,767.53 recovered by victims through the Daedalus bankruptcy proceedings; $175,104.24 recovered by victims through the HMMH bankruptcy proceedings;

---

[6] The Government is directed to provide the Clerk's office with up-to-date addresses for all of the victims.

and $1,700,000 recovered by victims through the lawsuit against Lagamaro and Ferrazzano, as discussed above, Mr. Yalincak's remaining restitution obligations are as follows:

| Victim | Amt. Paid | Amt. Outstanding |
|---|---|---|
| W.A-M. | $86,111.40 | $675,682.58 |
| F.M. | $1,182,064.89 | $567,935.11 |
| R.D. | $1,000,000 | $0 |
| J.C./L. C. | $67,579.31 | $614,420.69 |
| **TOTAL** | $2,335,755.60 | $1,858,038.38 |

The Clerk's Office is requested to update its records accordingly. The stay on distribution of funds from Mr. Yalincak's accounts is lifted.

### II.     Conclusion

Mr. Yalincak's Motion [Doc. # 238] for Reconsideration is GRANTED to the extent discussed above and otherwise DENIED. That part of Mr. Yalincak's motion which sought a stay is denied as moot.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of September, 2015.